UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-CV-277-KSF
SHARON FAUL                                                                                  PLAINTIFF


v.                                               **OPINION & ORDER**


BOARD OF EDUCATION OF DANVILLE
INDEPENDENT SCHOOLS and CARMEN COLEMAN,
individually and in her capacity as Superintendent of the
Danville Independent School District                                        DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

       This matter is currently before the Court upon the motion of the defendants, Board of

Education of Danville Independent Schools (the "BOE") and Carmen Coleman ("Coleman"),

individually and in her capacity as Superintendent of the Danville Independent School District, for

partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

       The facts, as alleged in Faul's complaint, are as follows.  Faul was employed by the BOE as

a classified employee in the position of Director for the Family Resource and Youth Services Center

("FRYSC") serving Danville High School and Bate Middle School from 1997 until June 30, 2012.

In this position, Faul was subject to yearly performance evaluations.  Until the 2011-12 school year,

Faul had received good evaluations.

       In the Fall of 2011, the FRYSC Program had a vacant position and was hiring an assistant.

The hiring committee, composed of members of the FRYSC Advisory Committee, Faul, and the

principal, reviewed all applicants and selected two as their finalists.  The two finalists were African

1

American women who were qualified to hold the position. Instead of selecting one of the two finalists, Coleman awarded the position to another District employee, without input or agreement from the FRYSC Advisory Committee. The two applicants were advised that they did not receive the position.

Faul complained that Coleman's actions were in violation of the hiring procedures and subverted the hiring process, the opinions of the hiring committee, and the FRYSC Advisory Committee. She complained that one of two vetted applicants was supremely qualified for the position whereas the individual who was given the position was not. As a result of these complaints, Faul contends that she received a negative performance evaluation from Coleman, who had elected to become Faul's evaluator rather than having the principals at the high school and middle school perform the evaluation, as normally done. During her evaluation, she contends that no corrective action plan or other tools were provided or offered to Faul as a means of improving her performance and no review sessions were scheduled.

Faul also contends that after the hiring of the assistance, her work and program were unreasonably and overly scrutinized and unduly criticized. For example, Coleman yelled at Faul in a professional meeting and ignored Faul at a school orientation event where her presence and presentation were previously planned and discussed. Then on May 15, 2012, Faul received a letter from Coleman stating that she would no longer be serving as Director and would be placed in another classified position in the District. Coleman cited Faul's performance evaluation as a basis for her demotion from Director of the FRYSC Program to an instructional aide. Faul contends that this demotion caused her to suffer a substantial cut in salary as well as the prestige associated with the position. She also complains that Coleman's actions caused her humiliation, embarrassment,

2

emotional distress, and mental anguish.  Finally, Faul contends that she is qualified to hold the position of Director of the FRYSC Program.

Faul filed this civil action in Boyle Circuit Court on August 10, 2012.  In Count I, Faul alleges that the actions of the BOE and Coleman were in retaliation for Faul's report of mismanagement, violation of law and/or abuse, and thus in violation of Kentucky's Whistleblower Act, KRS 61.101 *et seq.*  Count II of Faul's complaint asserts a federal due process claim based on the 14th Amendment pursuant to 28 U.S.C. § 1983.  Finally, in Count III, Faul alleges that the Defendants' actions were in violation of Faul's right to be free of arbitrary and capricious actions as guaranteed to her under Section 2 of the Kentucky Constitution.  On August 30, 2012, the Defendants removed Faul's complaint to this Court pursuant to 28 U.S.C. § 1441 on the basis of federal question jurisdiction arising under 28 U.S.C. § 1983.

On September 24, 2012, the Defendants filed their Motion for Partial Judgment on the Pleadings [DE #4], arguing that the Complaint fails to state a claim against them under state law. The parties subsequently agreed that Count I should be dismissed against Carmen Coleman, and on October 2, 2012, the Court entered its Order of Partial Dismissal, dismissing, with prejudice, Count I of Faul's Complaint against Coleman in her individual and official capacity [DE #6].  The Defendants' motion remains pending as to the state law claims contained in Count III.

## II.     RULE 12(c) STANDARD

Motions for judgment on the pleadings under Rule 12(c) are adjudicated using the same standard applicable to motions to dismiss under Rule 12(b)(6).  Under that standard, the Court will presume that all well-pleaded material allegations of the pleadings are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem*

*Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Total Benefits*, 552 F.3d at 434; *JPMorgan*, 510 F.3d at 581-82. A Rule 12(c) motion for judgment on the pleadings may be granted only if the moving party is clearly entitled to judgment and when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law. *Id*. at 581-82.

**III.   ANALYSIS**

   **A.   COUNT III OF FAUL'S COMPLAINT BASED ON THE KENTUCKY CONSTITUTION WILL BE DISMISSED**

   Count III of Faul's complaint alleges that "Defendants' actions were in violation of Faul's right to be free of arbitrary and capricious acts as guaranteed to her under Section 2 of the Kentucky Constitution... As a result of Defendants' actions, Faul suffered compensatory damages, emotional distress and mental anguish" [DE #1]. Section 2 of the Kentucky Constitution provides that "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Ky. Constitution § 2 (1891). The Defendants argue that this section does not provide a specific avenue for an individual to either enforce this restriction or assert a cause of action under this section. They contend that the section is not self-executing and does not contain any language providing for an individual cause of action for the violation of fundamental rights. In support of their argument, the Defendants rely on *St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529 (Ky. 2011).

   In *St. Luke*, the Kentucky Supreme Court held that Kentucky law does not recognize a cause of action for alleged violations of Kentucky constitutional rights. Specifically, the Kentucky

Supreme Court ruled that Kentucky's General Assembly has not authorized a statutory private right of action for state constitutional violations, and refused to create a constitutional tort akin to a federal *Bivens* action for violations of Kentucky's Constitution. *Id*. at 536-37.

Despite the Kentucky Supreme Court's holding in *St. Luke*, Faul attempts to argue that her claims for "compensatory and equitable damages" are recoverable under the Kentucky Constitution. However, a review of her Complaint reveals that she is not seeking injunctive relief or plead reinstatement as a potential measure of recovery. Accordingly, Kentucky law does not recognize a cause of action to support Faul's claim based on Section 2 of the Kentucky Constitution. As a result, the Court will grant the Defendants' motion as to Count III of Faul's complaint.

## B.   THE BOE IS ENTITLED TO GOVERNMENTAL IMMUNITY ON FAUL'S STATE LAW CLAIMS CONTAINED IN COUNT I

Count I of Faul's complaint alleges that the "Defendants' actions were in retaliation for Faul's report of mismanagement, violation of law and/or abuse and thus, in violation of the Kentucky Whistleblower's Act, KRS 61.101 *et seq.*" and "caused Faul to suffer compensatory damages, emotional distress and mental anguish" [DE #1] Pursuant to the parties' agreement, the Court has dismissed this claim as it pertained to Defendant Coleman, individually and in her official capacity [DE #6]. Consequently, this claim is proceeding only against the BOE. The Defendants argue that Faul's state law claims against the BOE are barred by the doctrine of governmental immunity.

In *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), the Kentucky Supreme Court held that an agency of state government enjoys what is termed "governmental immunity" from civil damage actions. The Supreme Court explained that governmental immunity is a public policy, derived from the doctrine of sovereign immunity, which is premised on the notion "that courts should not be called

upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an adequate crucible for testing the merits of social, political or economic policy." *Yanero*, 65 S.W.3d at 519. As a result, governmental immunity shields state agencies from liability for damages only for those acts which constitute governmental functions; i.e., public acts integral in some way to state government. *Id*. This immunity, however, does not extend to agency acts which serve merely proprietary ends; i.e., non-integral undertakings of a sort private persons or businesses might engage in for profit.

Under these rules, the Supreme Court has further held that:

[a] board of education is an agency of state government and is cloaked with governmental immunity; thus, it can only be sued in a judicial court for damages caused by its tortious performance of a proprietary function, but not its tortious performance of a governmental function, unless the General Assembly has waived immunity by statute.

*Grayson County Board of Education v. Casey*, 157 S.W.3d 201, 202-03 (Ky. 2005). There being no suggestion of waiver in this case, the question is simply whether the BOE's hiring of administrators and teachers is appropriately characterized as governmental or proprietary.

As the Supreme Court acknowledged in *Yanero*, this distinction is sometimes difficult to draw, but in recent cases the Court has held that education is an integral aspect of state government and that activities in direct furtherance of education will be deemed governmental rather than proprietary. For example, in *Withers v. University of Kentucky*, 939 S.W.2d 340 (Ky. 1997), the Supreme Court held that notwithstanding the fact that the University of Kentucky Medical Center competes with private hospitals, its essential role in the teaching mission of the University of Kentucky College of Medicine renders its activities governmental. Similarly, in *Yanero*, the Supreme Court held that interscholastic athletics contributed substantially to the educational

purposes of the secondary schools and thus that a school board performed a governmental function when it authorized such athletics at its schools. *Yanero*, 65 S.W.3d at 527. In *Autry v. Western Kentucky University*, 219 S.W.3d 713 (Ky. 2007), the Supreme Court held that WKU's provision of dormitory housing for its students constituted a governmental function, not a proprietary one, stating: "Other providers of housing do so as a business, for profit; WKU does so as part of its definitive function. Viewed in this light, WKU is clearly entitled to governmental immunity." *Autry*, 219 S.W.3d at 718.

In this case, the BOE made personnel decisions to further its educational mission. Because the BOE was engaged in a governmental function rather than a proprietary function, it is entitled to immunity from damages claims arising from that function. Consequently, Count I of Faul's complaint against the BOE will be dismissed as barred by governmental immunity.

## IV.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

    (1)    the Defendants' motion for partial summary judgment is **GRANTED** as follows:

        (A)    Count I of Faul's complaint against the BOE is **DISMISSED** as barred by governmental immunity; and

        (B)    Count III of Faul's complaint against the BOE and Coleman, indvidually and in her official capacity, is **DISMISSED**;

    (2)    this matter **REMAINS PENDING** on Count II of Faul's Complaint against the BOE and Coleman, individually and in her official capacity.

This April 9, 2013.



**Signed By:**

*Karl S. Forester* $\mathcal{KSF}$

**United States Senior Judge**